106 March 19, 2025 No. 235

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Guardianship of A. E. D. D.

Cody DAVIS,
*Appellant,*

*v.*

Rebecca D. DEEN
and Gabrielle Holmes,
*Respondents.*

Coos County Circuit Court
17PR02161;
A183241

Jerome E. LaBarre, Judge.

Submitted February 7, 2025.

Jamie Hazlett filed the brief for appellant.

No appearance for respondents.

Before Tookey, Presiding Judge, Kamins, Judge, Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Petitioner appeals a limited judgment denying his motion to dismiss the guardianship of minor child A pursuant to ORS 125.090. Petitioner asserts that he is the biological father of A and assigns error to the trial court's failure to determine paternity and to dismiss the guardianship. We affirm.

As the result of involvement with the Department of Human Services (DHS), and with A's mother's consent, A's maternal grandmother became A's guardian in 2017. At that time, petitioner was incarcerated. In 2022, A's mother moved to terminate the guardianship, a request she later withdrew. After A's mother made that motion, petitioner sought to intervene in the case, asserting that he was A's biological father. In support, petitioner alleged that he "contemporaneously filed a Petition to Establish Custody, Parenting Time, and Child Support in Jackson County Case No. 22DR20597, and expects to have paternity officially be established through that case." The trial court granted petitioner's motion to intervene. At petitioner's request, the trial court ordered DNA testing for the purpose of establishing paternity. Petitioner completed the DNA test and filed the results with the court.

Petitioner next moved to dismiss the guardianship proceeding, arguing that the result of the DNA testing demonstrated that he was A's father:

> "Paternity has been established, and Intervenor is now ready to assume custody of the child and provide for the child's physical, mental, and emotional needs. It would be in the best interests of the child for her to live with him, and moreover Intervenor's rights as a parent necessarily trump the interests of the Guardian/Grandparent."

The guardian opposed that request and asserted that paternity was not "established" because A's mother had been dating both petitioner and his "biologically similar" brother at the time A was conceived. Petitioner did not file a motion to establish paternity, nor did he provide the court with the results of the Jackson County case that he averred, in his initial motion to intervene, would establish paternity.

At the hearing on petitioner's motion to dismiss the guardianship, the trial court made several observations:

"So what I have in front of me now is a two-page—it's a one-and-a-half page motion to dismiss guardianship and a one-page declaration with seven paragraphs, and there is nothing—there's a reference, the declaration by Mr. Davis in paragraph 4, 'My paternity of [A] has been confirmed by a court-ordered DNA test, the results of which are on file with the court,' but that—that is an evidentiary matter.

"* * * * *

"The way Oregon evidence law requires hearings to be conducted is there [are] exhibits and there is testimony, and if there's an exhibit that is offered into evidence, the exhibit needs to physically be offered, handed to the court clerk, and it needs to be then determined whether or not it meets the requirements of the law of evidence. If it does, the judge is to rule that it's admitted into evidence. And there's also testimony, and witnesses are sworn under oath, and they testify, and that's what happens in judicial determinations.

"And your motion is to dismiss a guardianship. It's not a motion to adjudicate paternity that I see, so I—I'm not quite sure procedurally what foundation exists."

Petitioner's counsel responded that the court should take judicial notice of the result of the DNA testing that, according to petitioner, was already in the court record without other parties' objection. Petitioner further pointed to a statutory evidentiary presumption providing that a blood test that results in a "cumulative paternity index of 99 or greater" creates a "disputable presumption of paternity." ORS 109.258. In response, guardian's counsel disputed petitioner's assertion there was no objection to the blood test establishing paternity:

"We object to the paternity, and we don't think that a DNA test alone in this circumstance is good enough, and we'd be happy to put evidence on if this was a hearing on paternity, which it isn't."

After hearing additional argument, the court ruled:

"Judges are limited to making decisions based on what is in front of the judge in a given case, in a given court proceeding. What is in front of this court at this time is the motion of [petitioner] to dismiss guardianship. * * *

"This court finds that a foundational requirement for the court even to consider this matter is the establishment of paternity. This court finds that paternity has not been formally established. This court finds that a motion to dismiss guardianship is not a proper procedural forum in Coos County to pursue a determination of whether or not there is paternity for [petitioner].

"That's particularly true because another proceeding is now occurring in another circuit court in another county in Oregon, specifically Jackson County, and under well-established legal principles, where one proceeding is going forward, a judge in another county can't simply jump in and make determinations particularly where the motion to determine paternity is not implicitly involved in a motion to dismiss a guardianship."

The court denied the motion to dismiss, as well as petitioner's subsequent motion to reconsider. This appeal followed.

On appeal, petitioner argues that the trial court erred by not determining that petitioner established paternity of A and also erred in denying petitioner's motion to dismiss the guardianship. In his first assignment of error, petitioner renews the arguments he made below; that, pursuant to ORS 109.258, the DNA test itself established paternity. Deferring to the trial court's factual findings that are supported by evidence in the record, we review the trial court's legal conclusions for legal error. *Caswell v. Day Law and Associates, P. C.*, 309 Or App 367, 375, 481 P3d 972 (2021); *Brown v. MacDonald and Associates, LLC*, 260 Or App 275, 277, 317 P3d 301 (2013).[1]

The trial court did not err. As the trial court recognized, petitioner moved to terminate the guardianship, not to establish paternity. Petitioner did not file a motion to establish, nor request an evidentiary hearing regarding, paternity. *See, e.g.*, *State ex rel Juv. Dept. v. L. V.*, 219 Or App 207, 211, 182 P3d 866 (2008) (explaining that, after father completed court-ordered genetic testing, "DHS moved to establish [father's] legal paternity under ORS 419B.395 and ORS 109.258"). Rather, petitioner insisted that no such efforts were necessary despite the guardian's objections

---

[1] Petitioner requests that we review the trial court's factual findings *de novo* pursuant to ORS 19.415, however, the basis upon which we affirm the trial court does not involve any factual determinations.

to paternity. And, despite the court explaining the proper path for petitioner to proceed to present evidence regarding paternity, petitioner insisted that no further steps were required.

As we understand petitioner's argument, he contends that ORS 109.258[2] required that the trial court determine, as a matter of law, that petitioner is A's father. ORS 109.258, however, contains no such mandate.

ORS 109.258 "provides that, *in a paternity adjudication,* '[a] disputable presumption of paternity is created if one or more blood tests [including DNA tests] result in a cumulative paternity index of 99 or greater.'" *Sause and Schnitzer,* 371 Or 573, 594, 539 P3d 722 (2023) (emphasis added) (quoting ORS 109.258). The statute is intended "to help resolve evidentiary disputes over the efficacy of blood tests in identifying putative fathers." *Id.* at 597. Accordingly, it does not itself create a proceeding to establish paternity; rather, it dictates how a trial court must view blood tests in such a proceeding. *See id.* at 598 ("For a blood test to lead to legal parentage, as ORS 109.258 contemplates, there must be an adjudication or other proceeding."); *see also* ORS 109.124 to 109.230 (establishing procedures for filiation proceedings, including who may initiate, where proceedings must occur, and contents of hearing). To aid a trial court in making a paternity determination in those proceedings, ORS 109.258 creates an evidentiary presumption "that may or may not lead to a determination of legal parentage." *Sause,* 371 Or at 597.

Petitioner may be correct that, in certain proceedings,[3] he would be entitled to an evidentiary presumption of

_____

[2] ORS 109.258 provides:

"A disputable presumption of paternity is created if one or more blood tests result in a cumulative paternity index of 99 or greater. If the court or administrator finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence."

[3] We observe that the proceedings contemplated by the chapter containing that evidentiary presumption do not include guardianship proceedings under ORS chapter 125. ORS 109.252 ("Unless the court or administrator finds good cause not to proceed in a proceeding under ORS 25.501 to 25.556, 109.124 to 109.230 or 419B.609, in which parentage is a relevant fact, the court *** upon

paternity based on his blood test. A motion to terminate a guardianship, however, is not a proceeding to establish parentage. In the absence of such a proceeding, an evidentiary presumption does not automatically establish paternity as a matter of law.[4]

      Affirmed.

---

motion of any party to the action made at a time so as not to delay the proceedings unduly shall, order the mother, child, alleged father and any other named respondent who may be the father to submit to blood tests.").

  [4] Because we conclude that the trial court's determination that petitioner failed to take the proper procedural steps to establish paternity was sufficient to support its decision, we do not address petitioner's second assignment of error, which challenges an alternate basis to support the same ruling. *See Allianz Global Risks v. ACE Property & Casualty Ins. Co.*, 297 Or App 434, 439, 442 P3d 212 (2019), *rev'd on other grounds*, 367 Or 711 (2021) (recognizing that an affirmance of a trial court's ruling on one basis obviates the need to reach arguments challenging alternate bases supporting trial court's decision). Our disposition also obviates the need to address petitioner's third assignment of error, which relies on the premise that paternity was established to challenge the denial of the motion to dismiss the guardianship.